MYERS v. DUNBAR. See Case No. 9,991.

MYERS v. EUNSON. See Case No. 9,991.

## Case No. 9,991.

### MYERS v. FRAME et al. MYERS v. DUNBAR et al. SAME v. SWIFT. EUNSON et al. v. PEDDIE.

[8 Blatchf. 446; [1] 4 Fish. Pat. Cas. 493.]

Circuit Court, S. D. New York. May 18, 1871. [2]

PATENTS—INFRINGEMENT—IMPROVED MACHINE FOR SAWING THIN BOARDS—DISCLAIMER—COSTS.

1. The letters patent granted May 23d, 1854, to John Myers and Robert G. Eunson, for an "improved machine for sawing thin boards, &c.," are valid, when construed in connection with the disclaimer filed to a part of the first claim of the patent.

2. The inventions described and claimed in the patent, explained.

3. Various devices in the defendants' machines described and explained, and held to be infringements of the patent.

4. The disclaimer in this case held to have been proper, and in proper form.

[Cited in Electrical Accumulator Co. v. Julien Electric Co., 38 Fed. 135.]

5. A claim to the use of two deflecting plates, one at each side of the saw, sustained, as not being a mere duplication, although a single deflecting plate, on one side of the saw, had before been used.

6. Costs not allowed to the plaintiffs on a recovery, as the disclaimer was not filed before the suit was brought.

7. Where the owner of the entire right under the patent for the territory where the infringements had taken place, had not joined in the disclaimer, and there was no evidence that he had unreasonably neglected to disclaim, and no such defence was set up, he was allowed to make such disclaimer, after final hearing.

[These were four bills in equity, filed to restrain the several defendants from infringing letters patent [No. 10,965,] for an "improved machine for sawing thin boads," etc., granted to John Myers and Robert G. Eunson, May 23, 1854, and extended for seven years from May 23, 1868.] [3]

Frederic H. Betts, for plaintiffs.

Charles M. Keller and Charles F. Blake, for Frame, Nichols and Robbins, and Dunbar and Hopper.

Jonathan Marshall, for Swift.

Miller & Peckham, for Peddie.

BLATCHFORD, District Judge. These suits are founded on letters patent of the United States, granted May 23d, 1854, to John Myers and Robert G. Eunson, for an "improved machine for sawing thin boards, &c." The patent was extended, on the 13th of May, 1868, by the commissioner of patents, for seven years from the 23d of May, 1868. On the 20th of May, 1868, Robert G. Eunson assigned to Eugene S. Eunson all his

[1] [Reported by Hon. Samuel Blatchford, District Judge, and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 8 Blatchf. 446, and the statement is from 4 Fish. Pat. Cas. 493.]

[2] [Reversed in 94 U. S. 187.]

[3] [From 4 Fish. Pat. Cas. 493.]

interest in the patent and in the extension thereof and in all damages for infringing the same. On the 19th of October, 1864, John Myers and Robert G. Eunson assigned to Eben Peek and Gilbert J. Bogert all their interest in the patent for that part of the city of New York lying west of a line running through Broadway to the Eighth avenue, and through the Eighth avenue to the northerly limits of the city. On the 23d of May, 1868, John Myers, Robert G. Eunson and Eugene S. Eunson assigned to Peek and Gilbert Bogert all their interest in the patent for such territory for the extended term. The suit first above entitled is brought for an infringement of the patent within such territory. After it and the suits secondly and thirdly above entitled were brought, John Myers, who was one of the plaintiffs, in each of them, died, and Margaret Myers, his widow, was appointed his executrix, on the 17th of November, 1870, and was substituted as a plaintiff, in his stead, in each of them. The suits secondly and thirdly above entitled are brought for infringements of the patent within that part of the city of New York not embraced in the territory conveyed to Peek and Gilbert Bogert. On the 12th of September, 1866, John Myers assigned to Jacob Lagowitz all his interest in the patent for the state of New Jersey, and all damages for infringing the same; and on the 19th of June, 1868, John Myers assigned to Lagowitz all his interest in the patent for the state of New Jersey, for the extended term. The suit fourthly above entitled is brought for an infringement committed at Newark, New Jersey.

The specification of the patent states that the invention is of "improvements in machines for sawing lumber into thin stuff, for mirror and picture frame backs, and other purposes for which thin stuff is used." It says: "The nature of the invention consists, 1st. In the employment or use of deflecting plates, one or two, placed at the sides of a circular saw, for the purpose of preventing the sawed stuff from coming in contact with the sides of the saw, and enlarging or expanding the saw kerf, and thereby preventing the stuff from binding against the edge of the saw near its teeth. The deflecting plates also allow the saw to be stiffened by a proper plate secured to it, and a thin veneer saw may consequently be employed, which will cause but a small waste of stuff in sawing, as a narrow kerf is made thereby. 2d. Our invention consists in the employment or use of elastic clamps, attached to the ordinary adjustable and elastic beds, between which the stuff is fed to the saw. The clamps above mentioned have an elasticity independent of the beds, and compensate for the varying thickness of the different pieces of stuff to be sawed, by holding firmly the extreme end of the stuff, and keeping it in proper position to the saw, however much the elastic beds may be expanded by a succeeding piece of stuff of greater thickness. 3d. Our invention consists in the employment or use of knives or cutters, secured to the adjustable beds, and so arranged as to cut or smooth off the rough and projecting sides of the stuff at the ends, making it of uniform thickness. 4th. Our invention consists in the combination of an adjustable bed and circular saw, arranged as will be hereafter shown." Then follows a description of the machine. A shaft runs transversely across the front part of a frame. On the shaft is placed a circular saw, formed of thin steel plate and such as is used for sawing veneers. On one side of the saw, a circular plate, somewhat less in diameter than the saw, is secured by rivets or screws. This plate stiffens the saw, and, without its use, a comparatively much thicker saw would be required. There are two deflecting plates, placed one at each side of the saw. The deflecting plate which is on the same side of the saw with the stiffening plate, covers the upper part of the stiffening plate, and the inner end of it does not project outward from the saw quite as far as the outward end of it. The deflecting plate on the opposite side of the saw is rather smaller in diameter than the other deflecting plate, and projects from the saw at about an equal distance at both ends. There are two feed roller beds placed vertically in the back part of the frame and parallel with each other. Both of these beds are made adjustable by screw rods, which bear against the sides of the beds, the screw rods of each bed being operated simultaneously by means of chains passing around small toothed wheels at the ends of the screw rods. There are two cranks, one of which is attached to one of the toothed wheels of each bed. The beds also have a lateral elasticity given them by means of india rubber or other springs attached to them in any proper manner. There are four feed rollers placed in the beds, two rollers in each bed. The feed rollers project some distance beyond the inner edges of the beds. There are two clamps, attached to the inner ends of the beds. At the back part of each clamp there are two journals, one at the top and one at the bottom. These journals fit in boxes which work or slide in recesses in the top and bottom pieces of the beds. There are set screws which pass transversely through the top and bottom pieces of each bed, and the inner ends of which bear against india rubber springs which are placed directly back of the boxes. There are two india rubber springs at the top of the clamps, one spring to each clamp. These springs are placed between the clamps and set screws which pass transversely through the top pieces of the beds. There are two stops which pass through the top pieces of the beds, one through each top piece, and regulate the distance of the lateral vibration of the clamps. Then follows a description of the knives or cutters before referred to, but they are not

involved in any of these suits. Motion is given to the feed rollers by proper gearing at the lower part of the rollers. The beds are adjusted relatively to the saw, so that the stuff may be sawed into the desired thickness. Either side of the saw may be made the "line side", by fixing permanently or destroying the elasticity of the proper roller bed. The stuff is placed between the feed rollers in the beds, and, motion being communicated to the saw and feed rollers, the stuff is fed towards the saw and cut by it, the two pieces being prevented from bearing against the sides of the saw by means of the two deflecting plates. When the outer end of the stuff has passed the innermost feed roller, the clamps bear against the stuff and hold it in a proper relative position to the saw. A fresh piece of stuff is then placed between the feed rollers and forces forward the preceding piece. If the new piece of stuff is rather thicker than the preceding piece, it merely acts upon the beds and forces the elastic one farther from the permanent one, without affecting the clamps, which have an independent elasticity, owing to the springs. If it is desired to saw stuff two inches in thickness into two strips, one of which is to be a quarter of an inch in thickness, that strip, being the thinner one, may be deflected by the plate which is on the same side of the saw as the stiffening plate, as that deflecting plate is inclined or projects outward from the saw farther than the other deflecting plate. The roller bed in line with the deflecting plate which is on the same side of the saw as the stiffening plate, is permanently fixed at one-quarter or an inch from the side of the saw. The opposite bed being elastic, the side of the saw on which the thin strip passes is the "line side." The opposite side of the saw may be made the "line side," by permanently fixing the opposite roller bed, and allowing the other one to remain elastic. The patentees state that, by those improvements, they can employ a thin veneer saw, and, consequently, a small amount of stuff is lost, as the saw kerf is narrow; and that the stuff to be sawed is always kept in a proper relative position to the saw, when varying in thickness. The specification says: "We do not claim the adjustable and elastic roller beds, F. F., for they have been previously used." The first, second and fourth claims of the patent, which are the only ones involved in these suits are as follows: "1st. The employment or use of the deflecting plates E. E'., one or both, placed at the sides of the saw, as herein shown, for the purpose of preventing the sawed stuff from bearing against the sides of the saw, and expanding the saw kerf, and also for the purpose of allowing a thin veneer saw to be stiffened by plates, D., one or two, as desired." "2d. The employment or use of the clamps, I. I., arranged as herein shown, or in an equivalent way, so as to have a lateral elastic movement, independent of the roller beds to which said clamps are attached, for the purpose of compensating for the varying thickness of different pieces of stuff, and keeping them in a proper relative position to the saw." "4th. The employment of an adjustable bed, F., with clamps, as described, in combination with the saw, C., when the saw has a stiffening plate, D., in line with said bed, by which the stiffened or rounded side of the saw is made the 'line side.' "

After these suits had all of them been brought, Eugene S. Eunson, and Margaret Myers, executrix of John Myers, filed in the patent office (but when, does not appear) a petition dated November 30th, 1870, signed by them, which states that they are the joint and exclusive owners of the patents for the whole of the United States, except the state of New Jersey, owned by Eugene S. Eunson and Jacob Lagowitz jointly, the city and county of Philadelphia, owned by persons unknown to them, and all that portion of the city of New York lying west of Broadway and the Eighth avenue, owned by Eben Peek and Gilbert J. Bogert; and that they thereby enter their disclaimer to that part of the first claim of the patent "which covers the employment or use of the deflecting plate E.," (which is the deflecting plate on the same side of the saw with the stiffening plate,) "at the side of the saw, thereby causing the said claim to include only the combination of the saw described with both of the deflecting plates, E., and E'., when both of said deflecting plates are used at one and the same time, in the manner and for the purposes described in said patent." The disclaimer then states that the said first claim of the patent will accordingly be as follows: "1st. The employment or use of the deflecting plates E. E'., both placed at the sides of the saw, as herein shown, for the purpose of preventing the sawed stuff from bearing against the sides of the saw, and expanding the saw kerf, and also for the purpose of allowing a thin veneer saw to be stiffened by plates, D., one or two, as desired;" that the petitioners also desire to disclaim that part of the patentees' description of their invention, wherein they say that the nature of the invention consists, first, in the employment or use of deflecting plates, "one or two," placed at the sides of a circular saw, &c., and to limit the nature of the invention to which claim is made, to the combination with the saw of the two deflecting plates, one at each side of the saw, as described; and that the disclaimer is to operate to the extent of the interest in the patent vested in the petitioners.

In the suit against Frame, Nichols and Robbins, the answer admits the use, by the defendants, of a machine for sawing thin boards, but denies that it infringes the patent. It also sets up a prior knowledge and use of the patented inventions by Charles Turner, Isaac Smith, John N. Lyman, Daniel Doncaster, James Hay, Henry McGoffin,

James Moses, C. M. Whiting, George W. Cook. Alvah Metcalf, William Rockwood, and the defendants. It also sets up, as containing prior descriptions of such inventions, Holtzapffel's Mechanical Manipulation, London, 1847, volume 2. pages 809 to 813; letters patent of the United States to Manassah Andrews and James Sproat, granted December 31st, 1839, to Pearson Crosby, granted April 8th, 1851, and to Pearson Crosby, granted November 3d, 1841, reissued March 10th, 1849, extended October 30th, 1855, and reissued April 28th, 1857; and letters patent granted in England to Auguste Edouard Loradoux Bellford, dated May 2d, 1853, and specification dated October 26th, 1853, and filed November 2d, 1853.

The plaintiffs' machine is one of great utility. It is not designed for the sawing of logs or of boards from logs, but is designed to saw lumber, that is, boards and planks, in the state in which they are found in the market, into thinner lengths. It is generally called a re-sawing machine, which indicates the subjecting again to the process of sawing, lumber which has been created by sawing. It is an object, in a re-sawing machine, that the kerf, or portion of the wood converted into saw-dust by the operation of sawing, should be as narrow as possible, in order that the largest possible number of thin boards may be obtained from a thick one. To accomplish this end, the only suitable saw is what is called a veneer saw, or a saw such as is generally used for sawing veneers. A veneer saw is a circular saw composed of thin plates or segments screwed fast to a central circular flange or stiffening plate, in such a manner that the stiffening plate protrudes on only one side of the saw, the other side of the saw being a plane. The veneer, after it is cut. passes off on the side which has the stiffening plate, while the unsawed part of the wood passes on, on the other side.

In the plaintiffs' machine, the organization is such that the stiffened veneer saw can be used. while the stuff can be sawed thin, and of an uniform thickness, from end to end, and the operation be rapidly performed. The saw revolves on a horizontal axis, and the board to be re-sawed is fed in with its two flat faces standing perpendicular. It is fed by feeding rollers, which have a yielding pressure to accommodate inequalities in the thickness of the board. When the machine is running, the feeding rollers on one face of the board are left free to yield, while those on the other face have their yielding feature destroyed. The distance, on the unyielding side, between the line of the periphery of the rollers and the line of the nearest face of the saw, is equal to and determines the thickness of the piece to be sawed off, such two lines being parallel to each other. The feeding rollers on either face of the board can be made to yield or be fixed so as not to yield, at pleasure, the fixed side being the gauge side or line side, determining the thickness of the piece to be sawed off, and the rollers on the other side being set so as to yield to inequalities in the thickness of the board. Thus, either side of the saw can be made the line side, as well the stiffened side as the plane side.

There is. in the machine, a provision for holding the board that is being sawed, after its rear end has passed beyond the gripe of the feeding rollers, and while a portion of it still remains to be sawed. This arrangement consists of two pressing instruments, one pressing on each side of the board near the saw, and between the feeding rollers and the saw, and forming a clamp. Each one of these two instruments can be set so as to yield to inequalities in the thickness of the board, and each one can be fixed so as not to yield. In the use of the machine, the fixed side of the clamp is the same side as the fixed side of the rollers and the line side of the saw, and when one side is fixed, the other side is left free to yield. The elasticity of each clamping instrument is independent of the elasticty of the feeding rollers which are on the same side with it. Therefore, when one of the clamping instruments is set to yield, it can yield in and of itself, without reference to the yielding of the feeding rollers on the same side. Hence, a board of one thickness may be pressed between the yielding and the unyielding jaws of the clamp, while a board of a different thickness is being fed and pressed between the yielding and the unyielding rollers.

Another feature of the plaintiffs' machine is the use of two deflecting plates, one on each face of the saw. They are thin, stiff plates, set in close to the saw face, and operating to relieve the saw from the pressure and friction of the surfaces each side of the cut in the board, and to open the cut and relieve the cutting edge of the saw.

The machine used by the defendants Frame, Nichols and Robbins, and which I call the Frame machine, has a circular veneer saw, composed of segments of thin metal, secured to a central supporting plate, and a deflecting plate on each face of the saw. The saw and the plates are substantially the same, in construction and mode of operation, as the saw and the plates in the plaintiffs' machine. and the combination of the saw and the plates is the same in the two machines.

The Frame machine has two pairs of feed rollers, one pair on each side of the board, each pair being in a frame. The rollers on one side can be set to yield, and. when so set, yield independently of the frame. In the plaintiffs' machine, when yielding is required, the entire frame which contains the pair of rollers yields. But this is only a formal difference. The Frame machine has two pressing instruments, which together form a clamp. On the same side with the yielding feed rollers, there is a yielding clamping instru-

ment, which, like the clamping instruments in the plaintiffs' machine, is a non-rotating piece of metal. Opposite to this, and on the line side or gauge side of the machine, is a fixed, unyielding roller, which forms the other member of the clamp. It is contended, for the defendants, that this clamping arrangement of theirs does not infringe the second claim of the plaintiffs' patent, for the reason that the roller, which forms part of the clamp, is not capable of having any lateral elastic movement, and that the clamp does not hold the stuff at its extreme end, as does the clamp in the plaintiffs' machine. But, the Frame machine does hold the stuff by means of an elastic action in the clamp, which elasticity is independent of the feed rollers, and thereby the machine can and does saw successive boards of varying thickness, one being held by the clamp while the succeeding one is being held by the feed rollers. To accomplish this, it is not requisite that more than one of the two instruments which form the clamp should be elastic at a given time, or that both of them should be elastic at one and the same time; and as shown by the description and drawings of the plaintiffs' patent, the roller bed on the line side is never set so as to be elastic when the machine is running, and, when such roller bed is made inelastic, the elasticity of the clamping instruments on the same side is destroyed, so that, in use, but one clamping instrument at a time is suffered to be elastic. The difference between the Frame machine and the plaintiffs' machine, in this respect, only measures the inferiority of the former. It has the entire invention and apparatus of the plaintiffs', in respect to the clamp, applied, however, to only one side of the machine.

The Frame machine also contains substantially the same arrangement of adjustable bed, clamp, saw and stiffening plate which is found in the plaintiffs' patent, and so combined that the stiffened side of the saw can be made the line side.

The foregoing views apply to the Frame machine of which Exhibit No. 5 is a model. It follows that it infringes the first, second and fourth claims of the plaintiffs' patent. The Frame machine of which Exhibit No. 6 is a model, contains the combination of two deflecting plates with the saw, which is covered by the first claim of the plaintiff's patent, and infringes that claim.

The answer in the suit against Dunbar and Hopper sets up the same matters of defence that are set up in the answer in the suit against Frame, Nichols and Robbins, adding, in respect to prior knowledge and use, the name of E. W. Robbins, and omitting that of John M. Nichols.

The machine used by the defendants Dunbar and Hopper has the combination of two deflecting plates with a circular veneer saw, which is covered by the first claim of the plaintiffs' patent.

That machine, which I call the Dunbar machine, has four feed rollers, two on each side of the machine. Two of the four are opposite to each other, and nearer to the saw than the other two are, which latter two are, also, opposite to each other. It also has two clamping instruments, which are located, with reference to the saw, substantially in the same place as the two clamping instruments described and shown in the plaintiffs' patent. One of those clamping instruments is rigidly attached to the standard which holds one of the two rollers nearest the saw, and the other of such instruments is rigidly attached to the standard which holds the other one of the two rollers nearest the saw. Therefore, neither one of such clamping instruments can have any lateral elastic movement independent of the roller held by the standard to which it is attached. One, however, of such clamping instruments has a lateral elastic movement independent of the feed roller on the same side which is farthest from the saw, and the result of the arrangement is, that inequalities in a board that is being sawed affect independently the lateral elastic action between the clamping instruments, and the lateral elastic action between the two feed rollers that are farthest from the saw, and two boards of different thicknesses may follow each other through the machine, and one of them be firmly held by the clamp, while the other is firmly held by the two feed rollers that are farthest from the saw. This is the substance and essence of the invention covered by the second claim of the plaintiffs' patent.

It is objected, that the plaintiffs' clamping instruments have an elasticity independent of the roller beds to which they are attached; that the clamping instruments in the Dunbar machine have no elasticity independent of the roller beds to which they are attached, one of them having an elasticity which is independent only of the roller bed to which it is not attached; that the second claim of the plaintiffs' patent claims expressly only clamping instruments which have a lateral elastic movement independent of the roller beds to which such clamping instruments are attached; and that, therefore, the Dunbar machine is, in respect to its clamping instruments, not an infringement of the second claim of the plaintiffs' patent. But this is too technical a view, and sacrifices substance to shadow. Taking the whole specification, and the statement of the invention, and the description, and the second claim, and reading them together, it is manifest, that the arrangement in the Dunbar machine embodies the real invention covered by such second claim, and that there is no violence to the language of that claim in so construing it as to hold it to cover an arrangement in which one of the clamping instruments has a lateral elastic movement independent of feed rollers with which it is combined or in connection with which it is used. The change made in the

Dunbar machine is not a substantial change, but is one that would be made by a mechanic seeking to vary form without varying substance, and hoping, while using the invention, to avoid the charge of infringement.

It is also objected, that each of the plaintiffs' clamping instruments has a swinging motion, on a vertical axis, so that they can hold at the same time between themselves, two boards of different thicknesses, without reference to any independent elastic action of the roller beds; and that neither of the clamping instruments in the Dunbar machine has any such swinging motion on a vertical axis. This feature exists in the plaintiffs' clamping instruments, and is a useful one, and is absent from the Dunbar machine, but it is not a feature that enters into the second claim of the patent, nor is it a feature that has anything to do with the question of a lateral elastic action in the clamping instruments independent of a lateral elastic action in some or all of the feeding instruments.

Nor does the absence from the Dunbar machine of provision for making the clamping instruments on both sides elastic independently of the elastic action of the feed rollers farthest from the saw, make it any the less an infringement of the second claim of the patent. This question has been already considered in reference to the Frame machine.

The Dunbar machine also infringes the fourth claim of the plaintiffs' patent.

In the case against Swift, no proofs have been taken on the part of the defendants. The answer sets up prior knowledge and use of the inventions by Asa M. Beard, George Hyde, J. B. Graham, R. Dorsett, and H. J. A. Neilson.

The machine used by Swift is made by the Huntington Machine Company, of Newark, New Jersey. It has the combination of the saw and the two deflecting plates of the plaintiffs' patent. The clamping instrument on the same side with the stiffened or rounded side of the saw, is permanently fixed to the roller bed that is nearest to the saw on that side. That side of the saw is permanently the line side. The clamping instrument on the other side is permanently fixed to the roller bed that is nearest to the saw on that side, but has a lateral elastic movement independent of the feed roller on the same side that is farthest from the saw. In this respect, the arrangement is, in substance, the same as in the Dunbar machine. The machine of Swift also infringes the fourth claim of the plaintiffs' patent.

The answer in the case against Peddie sets up the same matters of defence that are set up in the answer in the case against Dunbar and Hopper, omitting, in respect to prior knowledge and use, the names of Whiting, Cook, Metcalf, and Rockwood, and the patent to Andrews and Sproat. The machine used by Peddie is the same in construction as that used by Dunbar and Hopper.

There is no force in the suggestion that the specification of the plaintiffs' patent contemplates the use of any other description of feed than a roller feed, in connection with an independent elastic action in the clamping instruments.

The disclaimer of the use of only one deflecting plate with the saw, and the limitation thereby of the first claim to the use of the two deflecting plates with the saw, was proper, and the disclaimer was in proper form.

There is nothing in the fact that one deflecting plate is described in the extract from Holtzapffel, and in the Andrews and Sproat patent, which affects the novelty of the invention of the use of two deflecting plates in the plaintiffs' machine. The case is not one of mere duplication. In view of the fact that, in cutting from a block, as in the Andrews and Sproat patent, and from a log, as in the machine described in the extract from Holtzapffel, but one deflector is required, or could be used, and that the plaintiffs substituted, for the carriage feed before used with one deflector, a roller feed, in the use of which, in a machine for resawing boards, the saw is exposed to friction on both sides of it, so as to require a deflection of the board on both sides of the saw at the same time, the introduction of deflecting plates on both sides of the saw, so as to render practical the resawing of boards by a circular saw with a roller feed, must be regarded as a substantial invention, notwithstanding one deflecting plate had before been used in a machine for sawing from the log or block without a roller feed. The Andrews and Sproat patent, containing the one deflecting plate, was granted in 1839. Yet Crosby, in his patent of 1851, introducing devices to relieve the saw on both sides at once, did not hit on the idea of putting in two deflecting plates. The use of them was not obvious in such a machine as the plaintiffs'.

The prior use, by Doncaster, of the two deflecting plates with the saw, is not established; and the evidence shows that Myers and Eunson made the invention before it was made by Doncaster, or any one connected with him.

The English patent to Bellford, and the Crosby patent of 1851, are the same. Neither of them contains any clamping instrument which has a lateral elastic movement independent of any feed-roller bed in the machine. The machine which they describe would not allow one board to be held by a clamp, while a board of greater or less thickness was being held and fed by feed rollers.

There is nothing in the Crosby patent of 1841 to affect the novelty of the plaintiffs' patent. No evidence was given as to any other prior use or knowledge, that is set up in any of the answers; nor was the novelty of the fourth claim of the plaintiffs' patent attacked.

In the case against Dunbar and Hopper, and in the case against Swift, the plaintiffs are entitled to a decree for a perpetual injunction, and for an account of profits, based on

an infringement of the first, second, and fourth claims of their patent, but without costs, as the disclaimer in respect to the first claim was not filed prior to the bringing of the suits.

In the suit against Frame, Nichols and Robbins, Margaret Myers and Eugene S. Eunson are merely nominal plaintiffs. The plaintiffs Peek and Bogert are the owners of the entire right for the territory within which the infringement in that case took place. They have not disclaimed the claim to the use of one deflecting plate with the saw. That claim is anticipated by the Andrews and Sproat patent. There is no evidence that Peek and Bogart have unreasonably neglected to disclaim; nor is any such defence set up in the answer. Unless such disclaimer be made, there can be no decree for the plaintiffs. An opportunity will be allowed to Peek and Bogert to make such disclaimer, and present to the court evidence of its having been made. When such evidence shall have been presented, a decree will be entered for a perpetual injunction and an account of profits against Frame, Nichols and Robbins, in respect of the first, second, and fourth claims of the patent, but without costs.

The same course must be taken in respect to the suit against Peddie. Lagowitz is a joint owner with Eugene S. Eunson of the right to the patent for the state of New Jersey, where the infringement complained of in that suit took place. Eunson's disclaimer operates only to the extent of his interest, and does not cover the interest of Lagowitz.

[For other cases involving this patent see Myers v. Duker, Case No. 9,989; Eunson v. Dodge, 18 Wall. (85 U. S.) 414; Peek v. Frame, Case No. 10.903; Peek v. Frame, Id. 10.904; Emerson v. Simm, Id. 4,443.]

[For another case involving this patent, see Belding v. Turner, Case No. 1,243.]

[NOTE. In the case against Dunbar and Hopper, upon the coming in of the master's report, a final decree was entered against them. The decree, in addition, awarded $500 fees to the master. From this decree the defendants appealed to the supreme court and gave an appeal bond. Pending the appeal the master made application in this court for an attachment for the fees due him. Case No. 9,990. The supreme court subsequently, upon the hearing, reversed the decree of the circuit court, holding that there was no infringement. 94 U. S. 187.]